CHARLES TYNG & another *vs.* JAMES H. THAYER.

If, upon the dissolution of a partnership, it is agreed that the partners who remain shall take the property and close up the business of the firm, and a final settlement between the outgoing and remaining partners is postponed until the adjustment of the outstanding accounts, and the remaining partners subsequently receive upon a particular adventure of the firm an advance which proves to be more than is realized from the adventure, and do not repay the excess, such advance is to be treated, in a suit in equity against the outgoing partner for a settlement, as having been made for the benefit of all the partners.

In closing up the business of the firm, under such an agreement, the remaining partners have a right to use their best judgment in incurring such expenses as seem to be reasonable and necessary, and they are entitled to be allowed therefor; nor can it be objected for the first time, at the argument in this court on exceptions to the report of the master to whom the cause has been referred, that the sum allowed by him was greater than the amount claimed in the pleadings.

There is no error in the admission in evidence, at the hearing before a master to whom a cause has been referred by this court, of a deposition taken out of the Commonwealth on commission, although it does not appear that all the formalities required in depositions taken within the state were observed.

In a suit in equity between partners for a settlement, no final decree can be made while debts due from the firm remain unadjusted, unless the plaintiffs will deduct the amount of such debts from the sum which they seek to recover.

CONTRACT, containing a declaration seeking relief in equity, for a settlement of partnership accounts between the plaintiffs and defendant. The case was referred to a special master, who found the following facts:

On the 1st of August 1856, the plaintiffs, Charles Tyng and Philip Nunez, and the defendant formed a partnership to carry

on business as merchants at Havana, for two years, under the firm of Charles Tyng & Co. On the 1st of March 1858 the defendant desired to leave Havana, to reside in the United States, and the parties entered into "a memorandum of approximate settlement," which provided, amongst other things, as follows, "The interest of J. H. Thayer in the following accounts ceases entirely from this date, and at the following valuations, viz: [Then followed a list of certain accounts, amounting to $8849, of which the defendant's share, thirty per cent., was $2654.70.] The remaining accounts are to be kept open, and subject to future settlement; but, for the purpose of making at this time an approximate settlement, it is understood that his interest shall be calculated as follows: Of the accounts marked 'good' in the within paper, his interest in the amount, $30,121.04, at thirty per cent., is $9036.45. Of the remaining accounts, marked 'pending,' 'still,' and 'bad,' for an approximate settlement, their values shall be rated as follows: [then followed a list of certain accounts, amounting to $28,817.18, of which the defendant's share was $8645.15, making his estimated interest in all the accounts to be $20,336.30.] Pagarees to the amount of twenty thousand dollars . . . . . are to be given by the new house of Charles Tyng & Co. to the order of J. H. Thayer, as an approximate settlement. It is expressly understood and agreed upon that this is not to be considered as a final settlement; but that, as the various accounts now open shall be closed, his proportion of thirty per cent. of the commissions, profits or losses on these accounts shall be credited or debited to his account, as the case may be, and shall be subject to a final settlement hereafter."

Shortly afterwards, it being considered that the foregoing estimate was too large, it was agreed to reduce the amount of $20,000 to $17,500. The defendant then left Havana for the United States, where he has since lived; and the plaintiffs have continued to carry on business, as the new firm of Charles Tyng & Co. The plaintiffs paid the pagarees, or promissory notes, to the amount of $15,000, at their maturity; and refused to pay the remaining one of $2500, alleging that the business had so

resulted as to leave a balance due to them; and this suit was brought to recover such balance.

The plaintiffs took certain depositions at Havana, on commission; and the caption and certificates, though stating that the witnesses were sworn, failed to show that all the prescribed formalities were observed. These depositions were offered in evidence before the master on the 24th of June 1862, and the defendant consented that they should be read, subject to all objections. The hearing was adjourned from time to time, and the evidence was not all in until the 6th of January 1863. The defendant in his argument, for the first time, objected specially ·to the depositions, on the ground that it did not appear from the caption and certificates that the witnesses were properly sworn and examined. The master admitted the depositions.

The master allowed, on the credit side of an account called "Adventure Gonzalez," the sum of $14,000, which the plaintiffs contended should be only $8748.69. The evidence of Charles Tyng respecting this was substantially as follows: "The account called 'Adventure Gonzalez' was an account of a purchase of a cargo of wood, (mahogany, sabicu and cedar,) wrecked near Maniman, on the coast of Cuba. The wood was brought to Havana, and there most of it was shipped, by the ship Fraternidad, to England. At or about the time of the shipment, the house of Morrison & Co., of Havana, with whom we had had other transactions, and who were connected with the International Bank, advanced to us $14,000 on the bills of lading, and the lumber was consigned to a party in England having connection with them. The plaintiffs, before the ship sailed, notified the defendant of the advance. The net proceeds of the lumber, credited by Morrison & Co. to Charles Tyng & Co., April 15, 1859, were only $8748.69. But the balance of the $14,000, advanced on the cargo, has never been repaid to Morrison & Co. Both Morrison & Co. and the International Bank have failed; and Charles Tyng & Co. have been embarrassed, and have not paid their debts at maturity; and the whole matter is still open."

The plaintiffs contended that the money was advanced for

the new firm, and that they alone were liable. to pay it; and that the defendant was only entitled to a credit for his share of the net proceeds of the adventure, in which alone he was interested. But the master considered the defendant entitled to the benefit of this advance, and allowed it accordingly.

The master allowed to the plaintiffs certain items, amounting to $10,195.44, for freight paid to one Gabancho for bringing the wood of the Gonzalez adventure from Maniman to Havana, and for costs and expenses of a suit brought against the firm to recover a part of the freight, and $1000 damages, which the firm were compelled to pay for breach of contract. The old firm of Charles Tyng & Co. had made a contract in writing with Gabancho to bring the wood for a stipulated price; but, after the defendant left Havana, the contract was modified by the plaintiffs. Under the contract as modified, a much higher price was to be paid for the carriage of the lumber. Of this new contract the plaintiffs gave the defendant no notice. After the lumber had been brought to Havana, the plaintiffs refused to pay the whole amount Gabancho demanded for transportation of the lumber, because they claimed that his measurements were not correct. The question in dispute was left to two referees; who disagreed; and a suit was brought by Gabancho, under the Spanish law, to procure the appointment of a third referee, and to enforce the award which should be made. The referees awarded nearly the whole amount claimed by Gabancho; and Tyng & Co. were also obliged to pay one thousand dollars, the amount fixed by the terms of the agreement to be paid by the party who should violate it, and the costs and expenses of the litigation. The defendant contended that the plaintiffs in this suit were in fault for not performing the agreement, and that they must themselves pay all expenses resulting from it; and that, therefore, the items for the stipulated damages, and also for the costs and expenses of the suit, amounting to $1697.44, should not be allowed. The defendant also contended that a valid contract for the transportation of the lumber had been made with a responsible party, and therefore the plaintiffs in this suit had no authority, without the consent of the defendant, to

make a new contract to pay a higher price; and that, as it appeared that the price was increased an average of fifty per cent. under the new contract, a deduction of one third, or $2758.93, should be made from the amount paid for the transportation of the lumber.

The master found that the payments were made according to the terms of the new agreement. There was evidence showing that the brig owned by Gabancho was the only one to be had, suitable for the transportation of the lumber; that the prices paid under the new contract were necessary and proper, and reasonable in amount; and there was no evidence of any want of good faith or ordinary diligence in making the new contract, or in disputing Gabancho's claim, or in defending the suit. The master therefore allowed all the amounts which the plaintiffs were compelled to pay by the award of the referees.

In the account annexed to the declaration, the plaintiffs claimed an allowance of $1500 for " costs and expenses defending lawsuits entered against us."

The master found that nothing was due from the plaintiffs to the defendant on the remaining note for $2500, given by them to him; and that there was due from the defendant to the plaintiffs the sum of $3171.96, with interest from the date of the writ. Both parties alleged exceptions, which are stated in the opinion. These exceptions were overruled ; and the parties appealed to the whole court.

*J. J. Storrow*, for the plaintiffs.

*G. P. Sanger*, for the defendant.

HOAR, J. Upon the coming in of the master's report, both parties have alleged exceptions.

1. The plaintiffs except to the allowance of the sum advanced by Morrison & Co., on the consignment of the cargo of the Fraternidad, as a credit to the defendant. The correctness of this allowance depends upon the relation in which the parties stood to each other, and to the property which was the subject of account. They had been partners, and the partnership had expired. The plaintiffs undertook to pay the defendant for his interest in the partnership property, and continued the general business on their own account. An approximate estimate was

made of the value of the defendant's interest in the adventures and transactions which were not then closed, and payments were made to him of the amount thus ascertained ; but it was expressly agreed that these accounts should remain open and subject to future settlement, and that any gain or loss upon them should be credited or charged to him in the proportion which his share bore to the whole amount.

The effect of this contract was, that the partnership continued as to these unsettled accounts, and whatever was received by the plaintiffs upon them was received on behalf of the defendant, as well as on their own. It would then follow that, when Morrison & Co. made an advance on the bills of lading, the money thus received was on the joint account of the plaintiffs and defendant. He is liable with them to refund to Morrison & Co., if there has been an over payment. Although it appears that Morrison & Co. allowed a smaller sum than that which they advanced, as the proceeds of the cargo, yet the plaintiffs have not repaid the difference. If they should pay it, and when they pay it, if it is found justly due, they will be entitled to make a charge in account against the defendant based upon it. In the mean time, it is merely a liability on account of the adventure not yet discharged ; and, until the plaintiffs discharge it, they cannot make any deduction from the amount of partnership property in their hands on account of it, or require the defendant to allow anything for it in a settlement.

The plaintiffs' second exception is the same in substance ; and both are overruled.

2. The defendant excepted to the admission of certain depositions, on the ground that the caption and certificates did not show that the witnesses were properly sworn and examined. The depositions were originally admitted, subject to all objections. The hearings continued for six months afterward, and it was not until that time had elapsed, and all the evidence was in, that the defendant's counsel in his argument first suggested this objection. The objection was merely formal, and, if well taken, might have been obviated, if it had been seasonably brought to the notice of the party using the depositions. We think it must be considered as waived. But if it were now

open, it could not be supported. It sufficiently appears that the deponents were sworn, and were examined according to the directions in the commission, and the defendant had an opportunity to cross-examine. Being taken under a commission, and out of the state, the statute allows them to be used in the discretion of the court, although all the formalities required in depositions taken within the state were not observed. Gen. Sts c. 131, § 37. *Stiles* v. *Allen,* 5 Allen, 320. *Bacon* v. *Rogers, ante,* 146.

The other exception is to the allowance of certain costs and expenses incurred by the plaintiffs in the prosecution of the same commercial adventure which was the subject of the plaintiffs' exception. It was correctly decided by the master. The plaintiffs had the same right to use their best judgment in incurring such expenses as seemed to be reasonable and necessary in settling the outstanding affairs of the partnership that they had while the partnership continued. Nor is the fact important, that the sum allowed by the master exceeds the sum stated in the acount annexed to the plaintiffs' writ. The objection does not appear to have been taken before the master. If it had been, the account might have been amended. Beside; this is a proceeding in equity, with a prayer for an account and for general relief. Any errors of the account as rendered may be corrected, if the parties are not thereby surprised or prejudiced.

All the exceptions to the master's report are therefore overruled, and the cause will stand for further proceedings and orders.

We do not see that in its present aspect the plaintiffs can be entitled to a final decree. While the claim of Morrison & Co. or the International Bank to a repayment of the excess of their advances, or any other debt of the partnership, remains unadjusted, the plaintiffs cannot recover of the defendant any sum as finally due in equity upon a complete and final settlement of the partnership affairs. This difficulty might be obviated, if, as in *Brinley* v. *Kupfer,* 6 Pick. 179, the amount were so small that the plaintiffs were willing to deduct it from the amount due to them.